# Hottner *v.* Aachen and Munich Fire Insurance Company of Aix-la-Chapelle, Appellant.

*Insurance—Fire insurance—Proofs of loss—Waiver—Local agent—Act of June 27, 1883, P. L. 165.*

Where a property insured against loss by fire under a standard policy is destroyed by fire, and the owner neglects to furnish proof of loss to the company within sixty days as provided by the policy, or to the local agent who had countersigned his policy, within twenty days as provided by the Act of June 27, 1883, P. L. 165, he cannot excuse his lack of compliance with the covenant of the policy as to furnishing proofs of loss, by setting up a verbal promise made by the local agent to the effect that the latter would do whatever was necessary, and that the insured need do nothing.

The requirement of the contract that, "within sixty days after the fire," the insured must furnish proofs of loss to the company, is as important, as binding, as vital since the act of 1883 as before it. The insured may still take the whole of the time given him by the contract for furnishing proofs of loss, and select his own method of getting them to the company. He may deliver them in person to the home office, or select the officer or agent that he may deem the proper person to receive them; he may send them by messenger, by mail, or otherwise, and take the risk of his ability to prove, at the trial, that he did, in fact and law, furnish them to the company within the time prescribed. But he may also remove this question from the dangerous uncertainty incident to every investigation depending on human testimony, by filing his proofs with the local agent within twenty days after the fire. He is not obliged to comply with the requirements of his policy in the special and easy way provided by the act of 1883, but he must still comply with them unless such compliance has been waived by the company. Per HEAD, J.

Argued April 16, 1906. Appeal, No. 79, April T., 1906, by defendant, from judgment of C. P. Fayette Co., Sept. T., 1904, No. 188, on verdict for plaintiff in case of Nathan Hottner v. Aachen and Munich Fire Insurance Company of Aix-la-Chapelle, Germany. Before RICE, P. J., PORTER, HENDERSON, MORRISON and HEAD, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before UMBEL, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,054.90. Defendant appealed.

*Error assigned* was (6) refusal of binding instructions for defendant.

*W. J. Sturgis*, with him *W. E. Crow*, for appellant.—Failure to furnish any proof of loss avoids the policy: Gould v. Dwelling House Ins. Co., 134 Pa. 570; Beatty v. Lycoming Mut. Fire Ins. Co., 66 Pa. 9; Everett v. Ins. Co., 142 Pa. 332; Whitmore v. Ins. Co., 148 Pa. 405; Freedman v. Fire Ass'n, 168 Pa. 249; Freedman v. Ins. Co., 175 Pa. 350; Penn Plate Glass Co. v. Ins. Co., 189 Pa. 255.

Proof of loss may be waived, but it is incumbent on assured to establish the authority of the person making such waiver: Union Refining, etc., Co. v. Bushnell, 88 Pa. 89; B. & O. Employés' Relief Assn. v. Post, 122 Pa. 579; Beddall v. Citizens Ins. Co., 28 Pa. Superior Ct. 600.

The act of assembly of June 27, 1883, P. L. 165, does not change the law: Springfield Fire & Marine Ins. Co. v. Brown, 128 Pa. 392; Welsh v. London Assurance Corp., 151 Pa. 607.

*H. L. Robinson*, of *Robinson & McKean*, with him *A. E. Jones*, for appellee.—The Supreme Court has held that the requirement that proofs of loss be furnished in a specified time may be waived in many ways: Freedman v. Providence Washington Ins. Co., 175 Pa. 350; Susquehanna Mut. Fire Ins. Co. v. Cusick, 109 Pa. 157; Universal Fire Ins. Co. v. Block, 109 Pa. 535.

A compromise, an adjustment, a reference to appraisers is a waiver: Wagner v. Dwelling House Insurance Co., 143 Pa. 338; McGonigle v. Susquehanna Mutual Fire Ins. Co., 168 Pa. 1; Snowden v. Kittanning Insurance Co., 122 Pa. 502; Fritz v. Lebanon Mutual Insurance Co., 154 Pa. 384.

The oral statement of an adjuster that no proofs were necessary was held a waiver: Mix v. Royal Insurance Co., 169 Pa. 639.

Whether the insurer has waived the requirement is a question for the jury: Dowling v. Merchants' Insurance Co., 168 Pa. 234; Allegheny Insurance Co. v. O'Hanlon, 1 Walker, 359; 1 W. N. C. 33; Drake v. Farmers' Union Insurance Co., 3 Grant, 325.

OPINION BY HEAD, J., October 5, 1906:

The policy of insurance, on which this action is founded, indemnified the appellee against loss by fire on his stock of mer-

chandise from October 20, 1903 to October 20, 1904. It had been countersigned and delivered by T. A. Jeffries, the local agent of the appellant company at Brownsville, Pa. It was of the usual form commonly known as a "standard policy." Its covenants were therefore mutual and the obligations it imposed on the insured were just as solemn and binding as the obligation of indemnity assumed by the insurer. Among the important covenants to be performed by the policy holder it was expressly stipulated that, in case of loss by fire, he would not only give "immediate notice" of such loss, but would "within sixty days after the fire, unless such time is extended in writing by this company, render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire," etc.; in other words, would furnish what has become generally known as "proofs of loss." Such a stipulation in a policy covering a stock of merchandise has been repeatedly held to be a reasonable one for the proper protection of the insurer, and its performance, under another plain provision of the policy, to be a condition precedent to the right to maintain an action against the insurer for the indemnity: Inland Ins. & Deposit Co. v. Stauffer, 33 Pa. 397; Welsh v. London Assurance Co., 151 Pa. 607. Of course it is true of a contract of insurance, as of every other agreement entered into by competent persons, that they who made it may unmake it, may modify, alter or abrogate it, and as a consequence, either party to it may waive the performance by the other of a covenant or condition inserted in the contract solely for the benefit of the first. Or, without attempting to expressly waive such a provision, a party to a contract may so conduct himself as to make it inequitable to permit him thereafter to claim the benefit of it; in other words, the law, without his assent, abrogates a certain provision of his contract as a sort of penalty, when it becomes necessary to prevent his forging, out of his own acts or declarations, a weapon that would enable him to unfairly gain an advantage over the other party. But the power to waive for himself, the liability to have waived by the law, an important provision in a contract, can be attributed only to the party who originally made it. If the party be a corporation it must act through some individual representative lawfully exercising the cor-

porate powers in that behalf. But the acts of such representative, as of the agent of an individual, in order to bind the principal, must be confined within the powers actually or constructively conferred upon him.

In the present case there was an entire failure on the part of the insured to furnish any proofs of loss within the specified time. This failure the appellee concedes would be fatal to his right to recover if the appellant has not lost its right to insist on a compliance with the provision of the contract already quoted. The plaintiff must therefore assume the burden of showing that the company, through some duly authorized representative, had either waived material provisions in the contract or estopped itself from demanding compliance with their obligations by the insured.

It is not contended by the plaintiff that he ever had any correspondence with the company at its home office or that he ever saw or spoke to any officer, general agent, adjuster or other person specially delegated to adjust and settle his loss. To excuse his own nonperformance of the plainly expressed covenants of his contract the insured relies solely upon a verbal promise of the local agent that he would do whatever was necessary and that the insured need do nothing. There was no agreement of any kind indorsed on the policy to in any way vary its terms and no attempt made to prove that the powers of the agent, conferred on him by the company, were other or greater than those usually possessed by the local soliciting agents of insurance companies. If the insured, under such circumstances, chose to rely on the voluntary promise of the local agent as his warrant for expunging from his contract some of its important provisions and ignoring the warnings therein given against such attempts to alter or waive the terms of the writing on which his claim is founded, he placed himself in the position described by AGNEW, J., in Marland v. Ins. Co., 71 Pa. 393, thus: "If deceived or lulled into security it was not by any act of the company, but by trusting to the mere opinion of one who had no authority to bind the company by any such expression." We do not deem it necessary to advert to the serious results to the enormous business of fire insurance that would flow from a declaration, by our courts of last resort, that the material covenants, inserted in a written con-

tract in such universal use that its very form has crystallized into a fixed and definite shape, could be waived or their performance be dispensed with, at the will or pleasure of a mere local agent who, neither by the terms of his commission nor of the contract, is authorized to deal with such matters.     We think it sufficient to say that, under the well-established rules of law regulating the liability of a principal for the acts of an agent, and under the many decisions of this and the Supreme Court in cases like the present, among which we may cite Pottsville Mut. Fire Ins. Co. v. Minnequa Springs Improvement Co., 100 Pa. 137 ; Mitchell v. Lycoming Mut. Ins. Co., 51 Pa. 402, and Beddall v. Citizens Ins. Co., 28 Pa. Superior Ct. 600, such a proposition would be untenable, unless the law in this respect has been changed by the Act of June 27, 1883, P. L. 165.     It ought not to be necessary to add, in this connection, that we are not now considering the powers of an adjuster, specially delegated to settle a particular loss, as in Mix v. Ins. Co., 169 Pa. 639 ; nor with a case where the insured has, in good faith, made an attempt, although a faulty one, to furnish the required proofs of loss as in Gould v. Ins. Co., 134 Pa. 570 ; and therefore these cases are not to the point.

But it is earnestly contended by the learned counsel for the appellee that, since the passage of the act of 1883, the powers of a local agent have been thereby so enlarged that, as to every covenant in the contract of insurance relating to giving notice of the fire and making proofs of loss, he has been legislatively clothed with all the powers of the company, and may speak and act with the same authority and responsibility as if he were dealing with a personal contract made by and for himself. If he choose to formally waive all the provisions of a written contract on these subjects, at his word they vanish into thin air ; if he elect to act as if such provisions did not exist, the law will turn a deaf ear to the demand of the contract itself that they must be complied with.     The first point for charge presented by the plaintiff, and the argument at bar in support of it, indicate this to be the real ground on which his claim to recover is rested.

If, in fact, the legislature has thus undertaken to intervene between a principal and its own agent and say to the former, It matters not what powers you may conclude to confer upon

or withhold from the latter, he shall, as to certain subjects, possess and exercise all the powers of a principal; no matter how solemnly you, and one who contracts with you, may stipulate, in a written agreement, that the performance of the obligations therein imposed on him shall not be waived or dispensed with by your local agent, a higher law than the law of the contract expunges from it all such provisions—the constitutionality of such an enactment would at once challenge our attention.

When, however, we examine the act referred to, we are unable to discover therein any adequate foundation for the superstructure thus sought to be erected on it. The language of the act manifests no intention, on the part of the legislature, to interfere with the respective rights or obligations of either party to a contract of insurance. The contract, since the passage of the act as before it, requires the insured to give " immediate notice " of any loss by fire. The act provides that if, within a fixed number of days, he give such notice to the local agent who countersigned his policy, his compliance with his contract, in that respect, is complete and is no longer a question for judicial determination. The requirement of the contract that, " within sixty days after the fire," the insured must furnish proofs of loss to the company, is as important, as binding, as vital since the act of 1883 as before it. The insured may still take the whole of the time given him by the contract for furnishing proofs of loss, and select his own method of getting them to the company. He may deliver them in person to the home office, or select the officer or agent that he may deem the proper person to receive them; he may send them by messenger, by mail or otherwise and take the risk of his ability to prove, at the trial, that he did, in fact and law, furnish them to the company within the time prescribed. But he may also remove this question from the dangerous uncertainty incident to every investigation depending on human testimony, by filing his proofs with the local agent within twenty days after the fire. He is not obliged to comply with the requirements of his policy in the special and easy way provided by the act of 1883 : Springfield Fire & Marine Ins. Co. v. Brown, 128 Pa. 392; Welsh v. London Assurance Co., 151 Pa. 607. But he must still comply with them unless such compliance has been waived by the company.

The filing of proofs of loss is not, of course, a condition precedent to the existence of the primary contract of indemnity, but is a step that must be taken before a right of action, on such primary contract, can become complete.

Where a person insured seeks the aid of a court to enforce his contract of indemnity, it is just as necessary for him to show compliance with such a condition of his policy, as to show that he has brought the defendant within the jurisdiction of the tribunal whose powers he invokes. If the legislature comes to his assistance, in respect to this step in his proceeding to recover, by providing that notice of his suit may be served on the local agent of the defendant, it would hardly be contended that there was implied, in such an enactment, any change in the contractual relations of the parties to the policy, or any grant of power to the local agent, because of his designation as the recipient of such notice, to waive important provisions of the contract or estop his principal from demanding compliance with them. Thus it appears that the contract imposes on the insured, after a fire has occurred, the obligation to do two particular and plainly specified acts. As to one of them, the time within which it must be done, as to both of them, the exact manner in which they are to be done, is left uncertain. The legislature offers to the insured a plan by which all of this uncertainty may be done away with, and the contract, in these respects, be carried into effect with ease and certainty. Such a construction of the act gives effect to its letter and reasonable intendment without imputing to the legislature the purpose of impairing, even by implication, the rights and obligations of the contracting parties created by themselves.

In the present case the insured did not comply with the requirements of his policy, either in the method prescribed by the act of 1883, or in any other way. He does not claim to have done so. He stands on the proposition that he was excused from doing so by the local agent, whose authority, in this respect, is sought to be drawn from the act of 1883. We cannot so construe the act. The plaintiff must stand on the contract he voluntarily made, and it is binding on us as it is on him. He has not discharged the obligations it imposed on him. He has not shown any release from such obligations by the com-

pany or anyone having authority to act for it in that behalf. We but declare the law of the contract itself in holding that the learned trial court should have affirmed the defendant's point for binding instructions.    The sixth assignment of error is sustained.

Judgment reversed.